55 CCPA

## Application of Lynn A. WILLIAMS.
### Patent Appeal No. 7893.

United States Court of Customs and Patent Appeals.
May 23, 1968.

John T. Love, W. Melville Van Sciver, Chicago, Ill., (Richard G. Kinney, Chicago, Ill., of counsel) for appellant.

Joseph Schimmel, Washington, D. C., (S. Wm. Cochran, Washington, D. C., of counsel) for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and SMITH, ALMOND, and KIRKPATRICK,[*] Judges.

KIRKPATRICK, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1 to 7 of appellant's application serial No. 361,637, filed April 22, 1964, entitled "Electrolytic Shaping."

The application was denominated by appellant as a division of certain copending applications which in turn are said to be divisions of application serial No. 772,960, filed November 10, 1958, and issued into patent No. 3,058,895, dated October 16, 1962. The present application as filed included the appealed claims which were copied for purpose of interference from patent No. 3,095,364 to Faust et al. (Faust), issued June 25, 1963, on an application filed November 27, 1959.

The issue raised by the rejection is whether the specification and drawings of the present application disclose subject matter supporting the claims.[1]

The subject matter on appeal relates to the art of electrolytically shaping an electrically conductive and electrochemically erodible material by bringing into close contiguity the surface of a workpiece and an electrically conductive cathode tool and passing an electric current between the tool and workpiece while pumping an electrically conductive electrolyte through the gap between the tool and workpiece.

Claim 1 is representative:

1. Apparatus for electrolytically removing material from an electrically conductive mass to provide the mass with a surface having a predetermined three dimensional contour and shape, comprising in combination: an electrically conductive tool, said tool having an imperforate working face portion having substantially the contour, shape [and] area of the surface with which the mass is to be provided; positive drive means for advancing said tool relative to said mass and for maintaining a gap of about 0.002 to 0.03 inch between the closest portions of said tool and said mass without contact between said tool and said mass; means providing an enclosed passage for electrolyte between said tool and said mass; means for supplying an electrically conductive electrolyte throughout said gap and between said closest portions and for flowing said electrolyte under pressure through said enclosed passage from an inlet disposed outside of the peripheries of the working face portion of said tool and of said surface to be provided in said mass on one side thereof across said working face portion between said working face portion and said surface of said mass to an outlet disposed beyond the peripheries of said working face portion and said surface only in directions generally parallel to the surface of said working face of the tool throughout said gap at a speed relative to the adjacent surfaces of said tool and said mass of from about 20 to 250 feet per second, and circuit means for supplying

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1]. The rejection is stated to be on the grounds that the claims are fully met by Faust as well as for lack of disclosure. Since there apparently is no question that the application on which applicant's patent issued, which antedates Faust's filing date, includes substantially all the disclosure in the instant application aside from the copied claims themselves, the single issue stated is determinative of the controversy.

a positive voltage to said mass and a negative voltage to said tool, said circuit means furnishing a voltage sufficient to provide a current density of at least about 5 amperes per square inch through said electrolyte in said gap between said closest portions of said tool and said mass.

Claims 2, 5 and 7 are apparatus claims similar in general to claim 1 while claims 3, 4 and 6 define a corresponding method. Such differences in language of the claims as are material to review of the board's decision will be noted hereinafter.

The examiner ruled that two expressions in the appealed claims are not supported by appellant's specification and drawings. He used claim 1 as an example, citing (with corrections) the expressions as:

(a) "said tool having an imperforate working face portion," * * * and,

(b) "means for supplying * * * electrolyte * * * from an inlet disposed outside of the peripheries of the working face portion of said tool and of said surface * * * on one side thereof across said working face portion between said working face portion and said surface of said mass to an outlet disposed beyond the peripheries of said working face portion and said surface * * *.

In supporting his position, the examiner construed the language of the claim in the light of the file history of the Faust patent, which shows the entire working face of the tool as imperforate with the electrolyte passed from an inlet at one edge of the face portion across it to an outlet on the opposite edge. Appellant, on the other hand, discloses constructions where the electrolyte passes outwardly from a central passage in an otherwise imperforate working face[2] and outwardly thereacross. In both the patent and application structures, the working face portion of the tool is maintained in closely spaced relationship to the work piece so that the electrolyte passes through a gap therebetween.

The board held that, "[i]n the absence of ambiguity" in the claim language, the examiner erred in resorting to the Faust patent for interpretation. It stated that its own evaluation was made on the basis that no ambiguity exists and that the claims were considered as being as broad as their terminology would reasonably permit.

The board then cited the following expression from claim 1:

* * * to provide the mass with a surface having a predetermined three dimensional contour and shape, * * * an electrically conductive tool, said tool having an imperforate working face portion having substantially the contour, shape and area of the surface with which the mass is to be provided * * *

It held that limitation, and similar limitations in claims 2 to 7, were not supported by appellant's disclosure, stating:

While it is our opinion that appellant has disclosed a tool having an imperforate working face portion, such as the imperforate face portion 279 in Fig. 4, however, the working face portion of the tool does not have substantially the contour, shape and area of the surface with which the mass is to be provided. In the first part of the claim as set forth above, it is stated, "to provide the mass with a surface having a predetermined three dimensional contour and shape." It is evident that the imperforate face portion of appellant's tool, such as the imperforate face portion 279, does not have the three dimensional contour, shape and area with which the mass is to be provided.

With respect to the portion of the claims corresponding to the expression designated by the examiner as (b), the board distinguished between the claims,

---

2. Certain forms of appellant's tool employ either an apertured or porous member over the end of the passage but those forms are not shown to be pertinent to the present issue.

holding that the language of claims 1, 2, 6 and 7 is supported while that of claims 3, 4 and 5 is not.

As a preliminary matter, we note that not only did the board overrule the examiner insofar as he may have regarded the claims as ambiguous, but also that the file history of the Faust patent has been omitted from the record without objection by the Patent Office. Our consideration of the appeal is therefore confined to the board's conclusion that the claims are unsupported when treated as unambiguous and as entitled to the broadest reasonable construction.

First consideration will be given to that terminology which the board held to be unsupported in all of the claims. The Figure 4 form of appellant's device, which the board referred to specifically as insufficient for support, can be understood from Figures 3, 4 and 8, reproduced below:

The tool of Figure 4 includes a hollow metallic body 275 having a working tip 279 with a flange or laterally extending lip 281. The exterior surface is coated with a ceramic layer 283. In use, the tool is positioned with its working surface 279 close to the work piece; positive and negative terminals of a direct current power supply are connected to the work piece and tool, respectively; and the tool is advanced into the work as electrolyte is passed under pressure from the central passage in the tool through the gap between its working face and the work piece.

A tool similar to that of Figures 3 and 4 is shown in Figure 8 after having progressed a distance into the work at 88. A projection of the work material 285 extends into the tool in the latter figure. The application also discloses that the interior surface of the tool may be insulated in certain cases, as "where it is desired by a trepanning operation to form an accurate untapered shape on the work within the electrode, this portion thereby becoming the finished workpiece, or an integral portion thereof."

We think that the tool of Figure 4, especially at the early stages of its penetration into the work mass, does provide said work mass with a surface having a three dimensional contour and shape which corresponds to "substantially the contour, shape and area" of the working face portion of the tool. Also, it appears that condition will be met in the case where the tool is used to perform the so-called "trepanning operation" disclosed in the quotation immediately above.

What is equally important, we think that the recitation now under consideration is met by other forms of appellant's tool, in particular those of Figures 32 and 33 [3] reproduced below:

*Fig. 32.*      *Fig. 33.*

In Figure 32, a tool 381 having a conical nose 383 is employed to form a substantially conical cavity 389 in a work piece 387. It being found that the cavity so formed departs slightly from a true cone at 391, the arrangement of Figure 33 is used to provide a tool which will provide a cone lacking that imperfection. There a block 393 having a conical recess is connected to the negative terminal of the power supply to serve as the tool in shaping the substantially conical tip of 381, which is ultimately to be used as a tool.

The only other ground of rejection before us is limited to claims 3, 4 and 5. The board used claim 3 as illustrative, stating:

> Claim 3 sets forth:
>
> * * * and flowing said electrolyte in a closed passage under pressure through said gap from an inlet disposed beyond the periphery of said face portion on one side thereof to an outlet disposed beyond the periphery of said face portion on another side thereof *only in directions generally parallel to the surface of the face portion of said tool* * * * [Emphasis supplied by the board.]

It is our opinion that this portion of claim 3 is not supported by appellant's disclosure. This portion of the claim sets forth the direction of the general flow of the electrolyte in a closed passage through the gap from an inlet disposed beyond the periphery of the face portion of one side thereof to an outlet disposed beyond the periphery of the face portion on another side thereof. Since in appellant's device the direction of the general flow of the electrolyte through the closed passage from the inlet 27 [4] to the outlet is *not* "only in directions generally parallel to the surface of the face portion of said tool" but also in other directions, it is our opinion that this

---

3. Although neither the examiner nor the board appear to have mentioned Figures 32 and 33, appellant relied on Figure 33 in his response to the examiner's first rejection of the claims and on both Figures 32 and 33 in his brief before the board.

4. The "inlet 27" is at the remote end of a passage communicating with the fluid passage in the tool at the end opposite its working face portion. The passage from that inlet is shown in the drawings as perpendicular to the passage in the tool.

portion of the claim does not find response in appellant's disclosure.

The expression in claim 3 which the board held was not supported by appellant's application bears a close resemblance to an expression in claim 1, which, along with corresponding expressions in claims 2, 6 and 7, the board held was supported. In fact, the resemblance is so great that a comparison of the language of claims 1 and 3 is necessary to a clear understanding of the rejection of claims 3, 4 and 5.

The pertinent expression in claim 1, with corrections in the board's quotation, reads:

> * * * means for supplying an electrically conductive electrolyte throughout said gap and between said closest portions and for flowing said electrolyte under pressure through said enclosed passage from an inlet disposed outside of the peripheries of the working face portion of said tool and of said surface to be provided in said mass on one side thereof across said working face portion between said working face portion and said surface of said mass to an outlet disposed beyond the peripheries of said working face portion and said surface only in directions generally parallel to the surface of said working face of the tool throughout said gap * * *

The board found that language supported by the showing in the drawings which includes the same "inlet 27" referred to in its above-quoted discussion of claim 3. The last part of the above quotation from claim 1, beginning "only in the directions * * *," is the same as the corresponding term italicized above in claim 3 except for referring to the "working face" of the tool instead of the "face portion" of the tool and the inclusion of the additional words "throughout said gap." Since the difference with reference to the tool is obviously not material here, it is apparent that the board regarded the latter

words in claim 1 significant. Thus, it apparently considered the absence of the words "throughout said gap" at the end of the term "only in directions generally parallel to the surface of the face portion of said tool" in claim 3 to result in that claim requiring that the direction of "generally parallel" flow extend throughout a passage between the "inlet" and "outlet" rather than merely "throughout the gap." Since the board further considered the passage between the "inlet" and "outlet" in applicant's device to include a portion outside of the gap in which the flow is not generally parallel to the surface of the face portion of the tool, it held that claim 3 was not supported.

However, the above quoted expression from claim 3 includes the term "through said gap" [5] immediately following the words "and flowing said electrolyte in a closed passage under pressure." We think that the language is reasonably construed as meaning simply that the flow of electrolyte "through said gap" is "only in directions generally parallel to the surface of the face portion of said tool." The intervening expression referring to the inlet and outlet then is merely additional description that does not change the meaning of "through said gap." The expression in claim 3 thus is no less supported by the application than that in claim 1.

Moreover, the expression in claim 3 set out by the board in its analysis and quoted above is preceded by the term:

> supplying an electrically conductive electrolyte *throughout said gap* between said closest portions [Emphasis supplied]

We think that language, which corresponds to language in claim 1 which the board did consider in setting out the critical expression therein for analysis, further indicates that the term "directions generally parallel * * *" limits only flow "through" or "throughout" the gap.

---

5. The antecedent for "gap" in claim 3 reads "a gap of about 0.002 to 0.03 inch between the closest portions of said tool and said mass."

Since claims 4 and 5 were rejected for the same reasons as claim 3, they also must be held to be supported by applicant's application.

The foregoing analysis requires reversal of the board's decision. It is to be recognized in connection with any further proceedings, however, that such reversal arises solely from our disagreement with the specific reasons the board set forth for finding the claims not to be supported by appellant's application and carries no broader implications.

The decision of the board is reversed.

Reversed.